UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| ASHLEY UNGERBUEHLER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:08-CV-20-REW |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION and UNKNOWN | ) | OPINION AND ORDER |
| DEFENDANTS BEING EMPLOYEES OR | ) | |
| AGENTS OF WASHINGTON MUTUAL | ) | |
| BANK, FA | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Federal Deposit Insurance Corporation (FDIC), through counsel, filed a motion for summary judgment as to all counts listed in the Complaint. *See* DE #44 (Motion); DE #44-1 (Memorandum). Plaintiff responded in opposition, *see* DE #46 (Amended Response), and Defendant subsequently replied. *See* DE #50 (Reply). Having reviewed the filings and full record, under the required standards, the Court **GRANTS** Defendant's motion for summary judgment.

**I. Background**[1]

This case arises out of damage done to Plaintiff Ungerbuehler's home by unidentified

---

[1] In accordance with Federal Rule of Civil Procedure 56, the Court discusses the facts in favor of Plaintiff, the non-movant, with one important exception. Instead of identifying the persons that entered Ungerbuehler's home on July 3, 2007, as unknown employees or agents of Washington Mutual, the Court refers to them as unidentified persons or unidentified defendants. As discussed in further detail, *see infra* 10-11, Plaintiff's proof that these unidentified persons were employees or agents of Washington Mutual is based on inadmissible hearsay, which the Court cannot consider when evaluating a motion for summary judgment. *See Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

persons allegedly employed by Washington Mutual Bank, FA (hereinafter "Washington Mutual"). *See* DE #1-2 (Complaint), at 3-4, ¶¶ 12-20. Plaintiff had purchased the house in September 2005, signing a mortgage agreement with CTX Mortgage Company, LLC. *See* DE #46-1 (Ungerbuehler Aff.), at 1, ¶ 1. The mortgage later transferred to Washington Mutual. *See id.* In February 2007, after Washington Mutual filed a foreclosure action, Plaintiff signed a Forbearance Agreement. *See id.* ¶ 3. Ungerbuehler allegedly was working to sell the home during the summer of 2007. *See* DE #1-2 (Complaint), at 3, ¶ 11.

On July 3, 2007, two unidentified defendants[2] entered Ungerbuehler's home without her consent and purportedly caused a significant amount of physical damage. To wit, these individuals

> disengag[ed] all utilities to the home, including but not limited to, disconnecting the water hose to the washer without closing the cut-off valve, manipulated the hot water heater to spew water upon reconnection, broke the locks on the doors, glued the front door lock shut, removed the garage door lock, removed door knobs from the doors, disassembled and damaged the toilets and drained them of water.

*See* DE #46-1 (Ungerbuehler Aff.), at 2, ¶ 4; *id.* at 3, ¶¶ 11-13 (listing losses incurred). Plaintiff called the police, and an unnamed neighbor allegedly told Ungerbuehler that the persons who entered the home referred to themselves as "Repo'rs." *See id.* at 2, ¶ 6. In the presence of Jason Fraddosio, a responding police officer, Plaintiff contends she "called Washington Mutual to ask if [her] house was in foreclosure." *See id.* ¶ 7. During the call, Plaintiff allegedly spoke to a bank employee who told Ungerbuehler that she was current on her payments and that the "Repo'rs" had erroneously entered her home. *See id.* ¶ 8. According to Ungerbuehler, that employee indicated that the bank would take responsibility for fixing the damage to the house. However, a different

---

[2] Plaintiff never attempted to amend to name the individuals. The record does not disclose any fruit of discovery that might identify these persons.

Washington Mutual employee allegedly told Plaintiff that "accidents happen and Washington Mutual was not fixing anything." *See id.* at 2-3, ¶ 8.

On August 2, 2007, Ungerbuehler, through counsel, sent Washington Mutual a timely Qualified Written Request pursuant to the Real Estate Settlement and Procedures Act (RESPA). *See* DE #46-3. This letter included requests for information about the unidentified persons that entered Plaintiff's home on July 3, the person who instructed the unidentified persons to enter Plaintiff's home, payment information related to the home entry, copies of loan documents, and information related to and contained in the Forbearance Agreement. *See id.* Washington Mutual failed to respond. *See* DE #1-2 (Complaint), at 7, ¶36.

In December 2007, Plaintiff filed the instant action in state court against Washington Mutual Bank, FA and its unknown employees or agents. *See* DE #1-2 (Complaint). The Complaint asserts multiple state-law torts as well as a state banking law violation and a RESPA claim. Washington Mutual promptly removed the action to federal court based on the parties' diversity of citizenship and the RESPA federal question. *See* DE #1 (Notice of Removal), at 1-2, ¶¶ 5-6. By the consent of the parties, the District Judge transferred the matter to Magistrate Judge James B. Todd. See DE #18 (Order). In September 2008, the Office of Thrift Supervision closed Washington Mutual due to its insolvency, and the FDIC became Washington Mutual's Receiver. *See* DE #44-1 (Memorandum), at 3; DE #28 (Status Report), at 1, ¶ 1 ("The FDIC owns Plaintiff's account and any potential liability related thereto."). As a result of this development, the District Judge held Plaintiff's case in abeyance pending administrative review of Ungerbuehler's claims. Additionally, the FDIC replaced Washington Mutual as the proper defendant in this matter. *See* DE #29 (Order) (granting motion to substitute). Upon completion of the requisite administrative review in

3

December 2009, Magistrate Judge Todd entered a new Scheduling Order. *See* DE #41 (Scheduling Order). Formal discovery closed on the April 19, 2010, deadline. *See id.* at 2, ¶ 2.

On May 18, 2010, Defendant filed a motion for summary judgment as to all claims in the Complaint. *See* DE #44 (Motion). In support of its request, the FDIC asserts its immunity, as a federal agency, from imposition of state fines, penalties, interest, and punitive damages. *See* DE #44-1 (Memorandum), at 4-5. Specifically, the FDIC argues that the Court, on the basis of this immunity, should dismiss: Plaintiff's claims for relief, under KRS § 446.070, for alleged violations of Kentucky's criminal mischief and burglary statutes; Plaintiff's claim pursuant to the Kentucky Residential Mortgage Fraud Act; and Plaintiff's claim for $600,000 in punitive damages. *See id.* at 7-8. Additionally, the FDIC argues that Ungerbuehler's RESPA claim cannot apply because the FDIC Receiver explicitly is not a "servicer" and Plaintiff lacks evidence that Washington Mutual engaged in a "pattern or practice of noncompliance" vis-a-vis its failure to respond to Plaintiff's Qualified Written Request. *See id.* at 9-10. Finally, Defendant asks the Court to dismiss the common law tort claims of intentional trespass, negligent trespass, and intentional infliction of emotional distress (IIED), along with the criminal mischief and burglary allegations, because Plaintiff lacks admissible evidence to prove a key element in each, *i.e.*, that the unidentified persons that entered and caused damage to her house acted as agents or representatives of Washington Mutual. *See id.* at 11; *id.* at 11-12 (also disputing Plaintiff's IIED claim based on the lack of evidence showing that the unidentified persons engaged in outrageous conduct, an essential element of the offense).

Plaintiff filed a timely response with supporting materials. *See* DE #46 (Amended Response). In support of her common law tort claims, Ungerbuehler references attached affidavits

4

sworn by herself and Officer Jason Fraddosio, both of which detail their respective conversations with alleged Washington Mutual representatives on July 3, 2007. *See* DE #46 (Amended Response), at 5; DE #46-1 (Ungerbuehler Aff.); DE #46-4 (Fraddosio Aff.). Plaintiff argues that the reported conversations are not hearsay under Federal Rule of Evidence 801(d)(2)(D). *See* DE #46 (Amended Response), at 5. Additionally, Plaintiff references the record evidence to support the allegation that the unidentified persons' conduct was outrageous in nature, thus creating a genuine issue of material fact for trial. *See id.* at 5-6. Additionally, Ungerbuehler references the statutory language, specifically the compensatory nature of the permitted recovery, to refute Defendant's immunity defense as to Plaintiff's KRS § 446.070 claims. *See id.* at 6-7. Finally, Plaintiff argues that the RESPA claim is proper in the context of this action because, unlike in the cases cited by Defendant, Ungerbuehler initiated suit against Washington Mutual, a "servicer" under the Act. *See id.* at 7-8.

Defendant subsequently replied. *See* DE #50 (Reply). In reply, Defendant argues that Plaintiff failed to demonstrate, beyond a citation to Federal Rule of Evidence 801(d)(2)(D), that statements attributed to an unnamed neighbor and unnamed representatives of Washington Mutual are admissible evidence rather than inadmissible hearsay. *See id.* at 3-4. Thus, Defendant reiterates the request for summary judgment as to the common law tort claims and the criminal mischief and burglary claims. *See id.* at 5. As for the RESPA claims, Defendant points to relevant statutory language in support of the contention that the Act does not apply to the FDIC. *See id.* at 6-7. Relatedly, the FDIC notes that Plaintiff failed to defend, and therefore waived, "her 'pattern or practice' allegations." *See id.* at 7. Finally, Defendant also argues that Plaintiff's failure to defend both Count 7 (Kentucky Residential Mortgage Fraud Act) of her Complaint and her claim for punitive damages constitutes waiver of those claims, justifying summary judgment in Defendant's

5

favor. *See id.* at 8.

The matter is fully briefed and ripe for decision. Having reviewed the briefs and the record, the Court, for reasons discussed below, **GRANTS** Defendant's motion for summary judgment.

This is a disturbing case, in terms of the underlying July 3, 2007, events. Despite a full discovery period, however, Plaintiff presents no evidence that would adequately fortify her claims and support, per Rule 56, pinning the depicted wrongful conduct on the failed bank. Because a jury question on that factual predicate is missing, and the other claims fall for legal reasons, Plaintiff's case cannot go forward.

**II. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). The Court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the Court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine issue of material fact initially rests with the moving party. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414

("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *See Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). In cases, as here, where the defendant is the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *See Anderson*, 106 S. Ct. at 2514. However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.* at 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *See Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be admissible at trial. *See Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006); *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment.").

**III. Analysis**

A. *Kentucky Common Law Tort Claims*

In Counts 1-3 of the Complaint, Plaintiff seeks relief from Washington Mutual for the tortious actions of its alleged employees. *See* DE #1-2 (Complaint), at 7-9, ¶¶ 40-54. The doctrine of respondeat superior or the theory of vicarious liability holds that an "employer is strictly liable only for the damages resulting from the tortious acts of its employees . . . [that are] committed in the scope of the employment. *See Patterson v. Blair*, 172 S.W. 3d 361, 364 (Ky. 2005). Kentucky courts evaluate scope of employment by examining the employee's conduct rather than the foreseeability of such conduct. *See id.* at 369. Thus, "[t]o be within the scope of employment, an employee's action must be of the same general nature as that authorized or incidental to the conduct authorized, i.e., the actions must be taken to advance the employer's desired ends." *See Olinger v. Corp. of the President of the Church of Jesus Christ of Latter-Day Saints*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (citing *Patterson*, 172 S.W. 3d at 368).

Because Ungerbuehler's suit against first Washington Mutual, and now the FDIC-Receiver is based on a theory of vicarious liability, Plaintiff has the burden to prove the common law or statutory elements of the torts presented *and* that the unidentified persons that entered and caused damage to her home were Washington Mutual employees. The bank denied such agency in the pleadings. *See* DE #4 (Answer), at 3, ¶¶ 16-19 (denying allegations that unknown defendants acting under the direction and control of Washington Mutual entered Plaintiff's home and caused specified damages). In the motion for summary judgment, Defendant, after noting the passage of the April 19, 2010, discovery deadline, points to the absence of any admissible evidence in the record to show that the unidentified persons that damaged Plaintiff's home were Washington Mutual employees or representatives. *See* DE #44-1 (Memorandum), at 11. Plaintiff, in response, asserts that the

statements listed in her affidavit and Officer Fraddosio's affidavit create a triable question and are admissible under Federal Rule of Evidence 801(d)(2)(D). *See* DE#46 (Amended Response), at 5. To be considered, an affidavit must present facts "that would be admissible in evidence." *See* FED. R. CIV. P. 56(e)(1).

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* FED. R. EVID. 801(c). However, an out-of-court admission by a party-opponent "is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" *See* FED. R. EVID. 801(d)(2)(D). A party seeking to admit an out-of-court statement bears the burden to show that the statement is not hearsay. *See Jacklyn*, 176 F.3d at 928.

The proof standard is a preponderance of the evidence on this preliminary question under Rule 104(a). *See Bourjaily v. United States*, 107 S. Ct. 2775, 2778-79 (1987) (holding in co-conspirator statement context that "when the preliminary facts relevant to [Rule 801(d)(2)] . . . are disputed, the offering party must prove them by a preponderance of the evidence."). That is, the proponent must show the court that each element of a hearsay exception more likely than not is true. The parties dispute the admissibility of the following statements in the Ungerbuehler and Fraddosio affidavits:

- In the presence of Officer Fraddosio, I called Washington Mutual to ask if my house was in foreclosure. *See* DE #46-1 (Ungerbuehler Aff.), at 2, ¶ 7.

- The first Washington Mutual employee I talked with confirmed I was not in foreclosure, all payments were current and she was so sorry [Washington Mutual sent unknown individuals to destroy property] they would send

9

- someone out as soon as they could to fix the damage. I was transferred to another employee who told me, "accidents happen" and I had to fix the damage that they were not going to do anything. I asked her what to do about the fact they broke all the locks on the doors and messed up windows so the house was left open so we could not lock the house any more to keep people out and she told me that I should probably go to Wal-Mart and buy some new locks. She just kept telling me accidents happen and Washington Mutual was not fixing anything. I told her we were going to get a lawyer and she said that was fine, they were not fixing the damage. *See id.* at 2-3, ¶ 8.

- Officer Fraddosio did not take an official police report since Washington Mutual admitted that they had sent the individuals who vandalized my house. Officer Fraddosio commented to me that the house did not appear to be vacant. *See id.* at 10, ¶ 9.

- On July 3, 2007, my mother, Dana Ungerbuehler, and I called Washington Mutual and talked with an employee who stated the bank had a right to enter the house because it was vacant. I asked what that meant, and she said they "could have" sent someone by the house twice and if no one answered the door, then the house was considered vacant and they must secure the house. *See id.* ¶ 10.

- The unknown individuals sent by Washington Mutual to destroy my house also stole my original closing documents and receipts for mortgage payments made by me. *See id.* ¶ 12.

- In my presence, Ms. Ungerbuehler called her mortgage company, Washington Mutual Bank to determine if the house was in foreclosure. Ms. Ungerbuehler gave her cell phone to me during the call so I could ask the mortgage company questions about entry into the house. *See* DE #46-4 (Fraddosio Aff.), at 1, ¶ 5.

- The employee from Washington Mutual informed me that they had made a mistake and the men that destroyed Ms. Ungerbuehler's house were supposed to go to another house. She stated that the individuals sent by Washington Mutual went to the wrong address and confirmed that the house was not in foreclosure. *See id.* at 2, ¶ 6.

- I asked the employee why they would send people to destroy someone's house and she said they were sent to secure the house. In my opinion this house did not look vacant and was in good condition from the outside. *See id.* ¶ 7.

While Plaintiff's response brief addressed the admissibility of the phone conversations with

Washington Mutual, *see* DE #46 (Amended Response), at 5, Ungerbuehler does not attempt to defend admissibility of the information purportedly relayed to her by her neighbor. *See* DE #46-1 (Ungerbuehler Aff.), at 2, ¶ 6 ("My neighbor on or about July 3, 2007 informed me that some unidentified men entered my house and stated to her that they were 'Repo'rs'.").

Plaintiff's conclusory reference to Rule 801(d)(2)(D) does not serve as proof, by a preponderance of the evidence, that the telephonic statements made by unnamed alleged employees of Washington Mutual constitute admissions by a party-opponent. The exception requires sufficient proof that each alleged statement came from "the party's agent" and was a statement "concerning a matter within the scope of the agency" and was made "during the existence of the relationship." *See* FED. R. EVID. 801(d)(2)(D).

Here, Plaintiff cannot identify the declarants by name, title or position. She has not provided the telephone number she used or otherwise described the precise (or even general) point of contact. Plaintiff does not explain where she called[3] or the source of the entry point at the bank. Although once referencing a discussion with a female, the information contains no additional independent information related to declarant characteristics. The Fraddosio affidavit does not explain how the affiant knew he was dealing with bank employees.

Certainly, the content of the statements advances Plaintiff's argument. However, under Rule 801, the "contents of the statement . . . are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under (D)[.]" *See* FED. R. EVID. 801(d)(2). The partial

---

[3] Plaintiff complained that the July 3 intruders took all of her original mortgage papers. *See* DE #1-2 (Complaint), at 4, ¶ 18; DE #46-1 (Ungerbuehler Aff.), at 3, ¶ 12. The forbearance agreement has a particular contact person and phone number, but Plaintiff does not aver that she used that number or called that person on the day in question.

corroboration flowing from the content does not eliminate the need for independent contextual or circumstantial information substantiating the hearsay exception. Here, with only the naked assertions of a Washington Mutual nexus, no evidence exists to prove declarant agency or scope. *See Evans v. Port Authority of New York & New Jersey*, 192 F. Supp. 2d 247, 265 (S.D.N.Y. 2002) (citing cases and noting requirement of "circumstantial evidence regarding the context in which the statements were made that would enable . . . [a] Rule 801(d)(2)(D) determination despite the lack of specific identification"); *Davis v. Mobil Oil*, 864 F.2d 1171, 1174 (5th Cir. 1989) (noting "[W]hile a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of [the rule]."); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 321 (4th Cir. 1982) (noting that "independent evidence establishing the existence of the agency must be adduced" and citing evidence of call to a specific phone number associated with business as adequate in context).

The record is devoid of the names of the two (possibly three) Washington Mutual employees that Ungerbuehler spoke to on July 3, 2007. Additionally, Plaintiff fails to provide any information as to the employees' respective roles and duties in the bank or their authority to make statements concerning procedures for determining property vacancy and whether to send individuals to repossess a particular property. In order for the Court to admit a statement as an admission by a party-opponent, the Court must find that "the statement *concerns* a matter within the scope of the agency or employment." *See Jacklyn*, 176 F.3d at 928 (emphasis original). In short, "[t]here is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer," *see id.*, and Plaintiff

provides no proof that any one of the alleged employees to whom she spoke were involved in or had the authority to confirm an order to take possession of a particular piece of property.

Because the statements allegedly made by the Washington Mutual employees do not, on this record, constitute admissions by a party-opponent, the Court finds that the aforementioned sections of the Ungerbuehler and Fraddosio affidavits present inadmissible hearsay. The Washington Mutual employees made these statements outside of a trial or hearing, and Plaintiff seeks to offer the statements "to prove the truth of the matter asserted," *i.e.*, that Washington Mutual employed or controlled the unidentified defendants and erroneously instructed them to enter and to render uninhabitable Ungerbuehler's home. Thus, the Court strikes these statements from the respective affidavits.

Plaintiff suggests no alternative theory that would impute the unidentified persons' behavior to the failed bank. In sum, and because of this hearsay analysis, the record lacks any admissible evidence that Washington Mutual directed the unidentified persons who entered and caused damage to Ungerbuehler's home. Based upon Plaintiff's failure to present admissible evidence to allow a jury to rule in her favor, the Court grants summary judgment for Defendant as to the common law tort claims listed in Counts 1-3 of the Complaint.

B. *Claims Under KRS § 446.070*

In a second category of claims, Plaintiff seeks civil damages in connection with the unidentified defendants' violations of Kentucky's criminal mischief and burglary statutes.[4] *See* DE

---

[4]

Plaintiff's response did not address the alleged violation of the Kentucky Residential Mortgage Fraud Act, found in Count 7 of the Complaint. Thus, Ungerbuehler, on notice of the arguments, essentially abandoned the claim, and Defendant is entitled to summary judgment. *See Young v. City of Cleveland*, No. 99-3275, 2000 WL 924590, at *2 (6th Cir. June 26, 2000) (upholding the district court's grant of summary judgment as to claims the plaintiff failed to address

#1-2 (Complaint), at 9-10, ¶¶ 55-63. Pursuant to KRS § 446.070, "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." *See* KY. REV. STAT. ANN. § 446.070 (West 2010). Despite Defendant's argument to the contrary, this statute provides for compensatory relief.

As with the common law tort allegations, however, Plaintiff's KRS § 446.070 claims fail due to a lack of evidence that would allow a jury to return a verdict in favor of Ungerbuehler. In short, Plaintiff cannot show that the FDIC (as receiver for Washington Mutual) is responsible for the conduct of the unidentified defendants. Because Ungerbuehler has failed to present evidence that Washington Mutual agents violated Kentucky's criminal mischief and burglary statutes, Defendant is entitled to judgment as a matter of law.

C. *Real Estate Settlement and Procedures Act (RESPA)*

Plaintiff's final cause of action centers around a violation of the Real Estate Settlement and Procedures Act (RESPA). *See* DE #1-2 (Complaint), at 10, ¶¶ 64-71. Specifically, Ungerbuehler seeks damages under 12 U.S.C. § 2605(f)(1), *see id.* at 11, ¶ 70, due to Washington Mutual's failure to respond to Plaintiff's Qualified Written Request. *See id.* at 10-11, ¶¶ 66-69. Plaintiff also seeks costs, per 12 U.S.C. § 2605(f)(3). *See id.* at 11, ¶ 71.

Defendant argues for summary judgment based on two distinct rationales: 1) FDIC is not a "servicer" and thus is not liable under the statute; and 2) the record does not reflect a pattern of noncompliance necessary to recover under 12 U.S.C. § 2605(f)(1)(B). *See* DE #44-1

---

in response); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."); *see also* FED. R. CIV. P. 56(e)(2) (listing response obligation).

14

(Memorandum), at 9-11. As support for these arguments, Defendant cites the explicit statutory exclusion of FDIC from the "servicer" definition, *see id.* at 10 (citing 12 U.S.C. § 2605(i)(2)), and two cases in which courts have dismissed a RESPA claim against an FDIC Receiver. *See id.* (citing *Fullmer v. JP Morgan Chase Bank, NA*, No. 2:09-cv-1037, 2010 WL 95209 (E.D. Cal. Jan. 6, 2010) and *Ibarra v. Plaza Home Mortgage*, No. 08-cv-01707, 2009 WL 2901637 (S.D. Cal. Sept. 4, 2009)). In response, Plaintiffs argue, without supporting case law, that this claim is still viable because Washington Mutual was a "servicer" and a proper defendant at the time Ungerbuehler filed her Complaint. *See* DE #46 (Response), at 7-8. Plaintiff also distinguishes the facts of her case from the facts of *Fullmer* and *Ibarra*; while the complaints in those cases succeeded the institution of a receivership, Ungerbuehler's complaint preceded FDIC receivership. *See id.* at 8.

Ultimately, Plaintiff again falls short of the proof necessary to overcome Defendant's motion for summary judgment. Even though Plaintiff filed a compliant Qualified Written Request with Washington Mutual and Washington Mutual failed to respond as required, Ungerbuehler cannot seek redress in a claim against the FDIC Receiver. Plaintiff asserts a violation that, by definition, only applies to a "servicer." *See* 12 U.S.C. § 2605(e) (entitled "Duty of loan *servicer* to respond to borrow inquiries") (emphasis added). Per the statute, "[t]he term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *See id.* § 2605(i)(2). However, the statute explicitly excludes from the definition "the Federal Deposit Insurance Corporation . . . in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or *as receiver* or conservator of an insured depository institution[.]" *See id.* § 2605(i)(2)(A) (emphasis added). This exclusion is unequivocal and does not depend on chronology of complaint filing; thus, Plaintiff cannot properly

15

pursue her RESPA claim against the FDIC. The FDIC is the defendant herein by virtue of the receivership, and the status thus forecloses the claim in this posture.

**IV. Conclusion**

For the reasons discussed above, the Court **GRANTS** Defendant's summary judgment motion in full.

This the 20th day of September, 2010.

Signed By:
Robert E. Wier
United States Magistrate Judge